## JOHN N. GRAVILLE, RESPONDENT, *v.* THE NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY, APPELLANT.

*Evidence — when the records of a corporation are inadmissible in its favor as against strangers.*

Upon the trial of an action against the New York Central and Hudson River Railroad Company to recover damages for its alleged negligence, the defendant desired to show what freight trains passed Rome, going east, between eleven and twelve o'clock P. M. on a certain day. A station-master at Rome observes the time at which each train passes, and gives the time and the number of the engine to the telegraph operator at that place, who telegraphs these facts to Little Falls, where they are entered upon what is called by the defendant its train sheet. This train sheet was offered in evidence without calling the station-master or telegraph operator at Rome to testify as to the truthfulness of the report made by them, and without in any way accounting for the defendant's failure so to call them.

*Held*, that the evidence was properly rejected as inadmissible as against the plaintiff.

APPEAL from a judgment, entered upon the report of a referee in favor of the plaintiff for $556, being the value of two horses and interest from August 8, 1875.

At that date the horses were drowned in the Erie canal at Rome, by reason, as the plaintiff claimed and the referee found, of the negligence of the defendant or its agents in the management of one of its railroad trains.

*D. M. K. Johnson*, for the appellant.

*M. D. Barnett*, for the respondent.

MERWIN, J. :

The only questions raised by the appellant relate to the rulings of the referee on matters of evidence. In the course of the trial it became material, according to the claim of the defendant, to show what freight trains passed Rome eastward between eleven and twelve o'clock of the night of August 7, 1875. For the purpose of showing this the train sheet and the train record, so-called, of that day, both kept at Little Falls, were offered in evidence. The train sheet shows the starting of all trains from Dewitt and West Albany, and when they pass the several stations between. As a train leaves Dewitt, going east, the dispatcher there gives the time and a description of the train to the telegraphic operator there, who sends it to the operator at Little Falls, and the latter enters such information on the train sheet. At Rome the station-man times each train as it passes, and gives the time and the number of engine to the telegraphic operator at Rome, who telegraphs it to Little Falls, and it is there entered in the train sheet, so that the correctness of the train sheet, so far as the passage of trains at Rome was concerned, depended on the truthfulness of the report of the station-man at Rome and the correctness of its transmission by the operator there. Neither of these persons were called as witnesses, or their absence accounted for. The train dispatcher at Little Falls described the manner in which the sheet was kept there, but had no knowledge of what occurred at Rome; so that there was no verification of the Rome entries except such as might be afforded from the custom of the company to keep such sheet at Little Falls. No case is cited showing that to be sufficient as against strangers. The strongest case cited is *Furness* v. *Cope* (5 Bing., 114; S. C., 2 M. & P., 197). That was an action by an assignee in bankruptcy to recover of defendant money alleged to have been

paid to him by the bankrupt under a fraudulent preference. In order to show the condition of the bankrupt and his firm just before bankruptcy, the ledger of the bankers with whom the firm kept cash was produced. The entries were made by various persons, and one of the clerks stated that it was the book to which all the clerks of the house referred to see whether they should pay the checks of their customers when presented. It appeared from this that the firm had nothing remaining in the bankers' hands. It was held that the book was properly received in evidence, BEST, Ch. J., saying the inconvenience of calling all the clerks of the house would be seriously felt, and without the book it would be impossible to prove that the party had no money in the house, and that to prove a negative the book to which all referred was sufficient, although it might not be admissible to prove the affirmative. Evidently the situation of the bankers' ledger was the test of the credit of the bankrupt. That does not reach the present case. Besides, here an affirmative is sought to be proved.

In *Ocean National Bank* v. *Carl* (55 N. Y., 440), it was held that entries made by the discount clerk of the bank can only be proved by the clerk making them, if alive and within the State, and the receiving in evidence statements from other witnesses made not from personal knowledge, but from entries not thus verified is error. In Angell & Ames on Corporations (§ 679), the general rule is said to be that entries in corporation books, of matters relating to any property or right claimed by them, can never be evidence for them unless made so by act of the legislature. (See, also, 1 Gr. Ev., § 793; *Wheeler* v. *Walker*, 45 N. H., 355; *Chen. Bridje Co.* v. *Lewis*, 63 Barb. 112.) Entries without verification do not affect strangers. (Whar. Ev. § 662; *Gould* v. *Conway*, 59 Barb., 355; Stark. Ev. [10th ed.], 455; *Mayor, etc.*, v. *Second Avenue R. R. Co.*, 31 Hun, 241.) The rule stated in *Payne* v. *Hodge* (7 Hun, 612), would at least require the verifying evidence of the Rome station-man and operator or its equivalent. The argument of the defendant's counsel seems to be that by reason of the extent of the business of the defendant and the difficulty of furnishing strictly verifying evidence, the rule ought to be relaxed in the present instance. Still, for aught that appears here, the witnesses necessary to verify the entries in question could have

been readily produced. More difficulty in that regard would often be experienced by banks or other corporations and even by some firms. We think the train sheet, so far as the Rome entries were concerned, was not sufficiently proved and was properly excluded. The same rule applies to the train book. The entries, as to the times of the passage of trains generally at Little Falls, were not as such offered. It is at least doubtful whether they were sufficiently proved, as the parties who made the entries that night there did not verify them except the entry as to one train which was in fact received. The opinion of the witness Phillips, as to whether or not the book was correct, or whether the sheet was so correct that he could tell what trains passed at Rome, was properly excluded. He had already given all his knowledge on the subject. The questions to the witness Richey: are you able to tell what stock trains passed Rome that night going east? State, if you know, what stock train did pass Rome the night of August 7, 1875, going east between eleven and twelve? were properly excluded. It was quite patent at that stage of the case that the witness had no personal knowledge on the subject. It was not claimed that he had, and very evidently he was called upon to speak from the entries in the train sheet and book. That being improper, the exclusion did not injure the defendant.

The judgment should be affirmed.

HARDIN, P. J., and FOLLETT, J., concurred.

Judgment affirmed.